Matter of Elizabeth St. Garden, Inc. v City of New York (2023 NY Slip Op 03434)

Matter of Elizabeth St. Garden, Inc. v City of New York

2023 NY Slip Op 03434

Decided on June 27, 2023

Appellate Division, First Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered: June 27, 2023

Before: Webber, J.P., Singh, Kennedy, Scarpulla, Pitt-Burke, JJ. 

Index No. 152341/19, 152561/19 Appeal No. 555-556 & M-2023-2000-2023-2459 Case No. 2022-05170, 2022-05466 

[*1]In the Matter of Elizabeth Street Garden, Inc., et al., Petitioners-Respondents,
v
The City of New York et al., Respondents-Appellants. Councilmember Christopher Marte, Amicus Curiae.
In the Matter of Friends of Elizabeth Street Garden et al., Petitioners-Respondents,
v
City of New York et al., Respondents-Appellants, Manhattan Community Board 2, Respondent.

Sylvia O. Hinds-Radix, Corporation Counsel, New York (Mackenzie Fillow of counsel), for municipal appellants-respondents.
Stroock & Stroock & Lavan LLP, New York (Kerry T. Cooperman of counsel), for Habitat for Humanity New York City Inc., appellant.
Perkins Coie LLP, New York (Benjamin Estes of counsel), for RiseBoro Community Partnership Inc., appellant.
Michael S. Gruen, New York, for Friends of Elizabeth Street Garden, Deborah Glick, Yuh-Line Niou, Jeannine Kiely, Kent Barwick, Emily Hellstrom and Barry Loewer, respondents.
Siegel Teitelbaum & Evans, LLP, New York (Norman Siegel, Herbert Teitelbaum and Goutam Jois of counsel), and McLaughlin & Stern LLP, New York (Oliver R. Chernon of counsel), for Elizabeth Street Garden, Inc., Renee Green, Elizabeth Street, Inc., Elizabeth Firehouse LLC, and Allan Reiver, respondents-appellants.
Balestriere Fariello, New York (Vittoria M. Fariello of counsel), for amicus curiae.

Order and judgment (one paper) of the Supreme Court, New York County (Debra A. James, J.), entered November 1, 2022, which, to the extent appealed from, granted the petition to annul the November 9, 2018 negative declaration of respondent New York City Department of Housing Preservation and Development (HPD) as arbitrary and capricious insofar as it found under the State Environmental Quality Review Act (SEQRA) that a proposed low-income senior housing development would not significantly impact open space resources, and remanded for further proceedings, and which, to the extent cross-appealed from as limited by the briefs, dismissed petitioners' claims that HPD's negative declaration was affected by an error of law in that the proposed project would violate zoning regulations, respondents New York City Planning Commission (CPC) and New York City Council (Council) failed to comply with zoning regulations in conducting the uniform land use review process (ULURP), and HPD failed to take a hard look at zoning, neighborhood character, public policy, and cumulative impact when issuing the negative declaration, unanimously modified, on the law and the facts, the petition denied in its entirety, the negative declaration confirmed, and the proceeding, brought pursuant to CPLR article 78, dismissed, without costs.
Order and judgment (one paper), same court and Justice, entered November 16, 2022, which, to the extent appealed from, granted the petition to annul the same November 9, 2018 negative declaration of HPD as arbitrary and capricious, on the same grounds, unanimously reversed, on the law and the facts, the petition denied in its entirety, the negative declaration confirmed, and the proceeding, brought pursuant to CPLR articles 30 and 78, dismissed, without costs.
We find that HPD appropriately "'identified the relevant areas of environmental concern, took a hard look at them, and made a reasoned elaboration of the basis for its determination'" (Matter of Riverkeeper, Inc. v Planning Bd. of Town of Southeast, 9 NY3d 219, 231-232 [2007], quoting Matter of Jackson v New York State Urban Dev. Corp., 67 NY2d 400, 417 [1986]). Agencies have "considerable latitude in evaluating environmental effects and choosing among alternatives" (Matter of Friends of P.S. 163, Inc. v Jewish Home Lifecare, Manhattan, 30 NY3d 416, 430 [2017] [internal quotation marks omitted]). The environmental assessment statement (EAS) forming the basis of HPD's review followed the methodology of the 2014 City Environmental Quality Review Technical Manual (Manual), applicable at the time of the complained of administrative action.
As to open spaces under chapter 7 of the Manual, the EAS examined the half-mile study area at length. It properly found it to be underserved, identified existing open spaces and described their various attributes, calculated the difference between the future open-space-to-population ratios based on whether or not the project were constructed, and considered [*2]the proposed replacement of the current 0.46-acre lot, in use as a garden by certain petitioners under a month-to-month lease with the City, with o.15 acres of open space adjacent to the proposed apartment building with longer and more regular hours of public access. The EAS noted, among other things, the presence of Washington Square Park immediately outside the study area, that the new space with longer hours would help balance the direct loss of the garden, that the added population of senior adults likely would not overburden existing mostly active open spaces, and that qualitative aspects of the surrounding area and nearby Washington Square Park would help mitigate the neighborhood's preexisting open space deficiency. Considering this evidence, HPD rationally applied the qualitative factors identified in the Manual, among them, the "type of open space (active or passive), its capacity and conditions," its "distribution," whether the area is underserved, "the distance to regional parks, the connectivity of open space, and any additional open space provided in the project." "These considerations may vary in importance depending on the project and the area in which it is located."
As to public policy considerations under chapter 4 of the Manual, petitioners in the first proceeding fail to demonstrate that HPD was required to take a hard look at sustainability goals allegedly arising from Mayoral Executive Order No. 26 of 2017. "[T]here are few sustainability standards to apply appropriately in assessing a proposed project," and assessments are only required for large publicly-sponsored projects. Indeed, the Executive Order does not set any standards, but directs City agencies to work with national and international partners "to develop further greenhouse gas reduction plans and actions that are consistent with the principles and goals of the Paris Agreement" (NYC Executive Order No. 26 [2017]). The City was "entitled to rely on the accepted methodology set forth in the ... Manual" and "did not have to parse every sub-issue as framed by petitioners" (Matter of Northern Manhattan Is Not for Sale v City of New York, 185 AD3d 515, 519 [1st Dept 2020]; see Matter of Save the Pine Bush, Inc. v Common Council of City of Albany, 13 NY3d 297, 307 [2009] [agency has "discretion in selecting which [environmental issues] are relevant" for SEQRA review]).
Further, as to neighborhood character and cumulative impacts under chapter 21 of the Manual, a preliminary assessment was properly performed since there were preliminary assessments for public policy and shadows, and detailed assessments for open spaces and historic and cultural resources. However, since no significant impacts were found in those areas, the EAS rationally concluded that no detailed assessment of neighborhood character was warranted (see Matter of Riverkeeper, Inc., 9 NY3d at 231-232). The EAS also rationally relied on the Manual's general methodology in finding no cumulative impact assessment [*3]was necessary, as "[o]nly under unusual circumstances would a combination of moderate effects to the neighborhood result in an impact to the neighborhood character, in the absence of an impact in any of the relevant technical areas" (see Matter of Northern Manhattan Is Not for Sale, 185 AD3d at 519).
Supreme Court properly dismissed the zoning-related claims by petitioners in the first proceeding, that HPD committed an error of law by finding that the project would not affect zoning in the area, HPD failed to take a hard look at zoning, and CPC and the Council failed to review allegedly required zoning changes under ULURP. Both claims against HPD arise from its SEQRA review, and are thus barred, since "except where the proposed action is a zoning amendment, SEQRA review may not serve as a vehicle for adjudicating legal issues concerning compliance with local government zoning" (Matter of WEOK Broadcasting Corp. v Planning Bd. of Town of Lloyd, 79 NY2d 373, 382 [1992] [internal quotation marks omitted]). Contrary to petitioners' contention, the claims do not fit within the exception, as there was no proposed zoning amendment. Regardless, the proposed project clearly places the "front building wall" along Elizabeth Street (Zoning Resolution 109-131), and the law applicable to this "through lot" allows, but does not require, two buildings with front building walls on both abutting streets, setting different lot coverage limits depending on whether one building or more than one are built (Zoning Resolution 109-122).
Similarly, the zoning-related claim under ULURP fails because CPC and the Council were reviewing only whether the proposed "disposition of the real property of the city" was appropriate, not "[d]esignations of zoning districts" or "[s]pecial permits ... under the zoning resolution" (NYC Charter § 197-c[a][3], [4], [10]). Nor did petitioners challenge compliance with zoning laws before CPC or the Council (see Matter of Coalition for Cobbs Hill v City of Rochester, 194 AD3d 1428, 1433 [4th Dept 2021]). Moreover, it is not for CPC or the Council to determine compliance with current zoning regulations, as that task is given to the DOB, with review by the Board of Standards and Appeals (NYC Charter §§ 643, 666[6][a]; see Matter of Toys "R" Us v Silva, 89 NY2d 411, 418 [1996]). Finally, as with the SEQRA zoning claims, this claim fails on the merits (NYC Zoning Resolution 109-122, 109-131).
We have considered the remaining contentions and find them unavailing.
M-2023-2000 — Matter of Elizabeth Street Garden, Inc., et al. v The City of New York et al.
Motion for leave to file amicus curiae brief granted.
M-2023-2459- Matter of Friends of Elizabeth Street Garden Inc., et al v City of New York et al.
Motion to file amicus curiae brief denied.
THIS CONSTITUTES THE DECISION AND ORDER OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: June 27, 2023